UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT K. FRAZIER, *et al.*, | No. C-11-4850 EMC |
| Plaintiffs, | |
| v. | **ORDER GRANTING DEFENDANT BANK OF AMERICA'S MOTION TO DISMISS** |
| AEGIS WHOLESALE CORP., *et al.*, | |
| Defendants. | **(Docket No. 5)** |
| _____/ | |

Plaintiffs Robert K. Frazier and Merriam LH Frazier have filed a foreclosure-related action against multiple defendants, including Countrywide Home Loans Servicing, LP ("Countrywide"). Currently pending before the Court is a motion to dismiss filed by Bank of America, N.A. ("B of A"), which appears to be the successor by merger to BAC Home Loans Servicing, LP, which in turn was formerly known as Countrywide. *See* Docket No. 1 (Not. of Removal ¶ 6(b)). At present, B of A is the only defendant to make an appearance in this lawsuit. *See* Docket No. 1 (Not. of Removal ¶ 14) (stating, upon information and belief, that other defendants have not been served).

A hearing on B of A's motion was held on December 13, 2011. Plaintiffs failed to file an opposition to the motion prior to or on the hearing date. In addition, Plaintiffs failed to make an appearance at the hearing to oppose the motion to dismiss. Taking into account Plaintiffs' failure to oppose and other deficiencies in Plaintiffs' complaint, as discussed below, the Court hereby **GRANTS** B of A's motion.

///

///

## I. FACTUAL & PROCEDURAL BACKGROUND

In their complaint, Plaintiffs allege as follows. Plaintiffs are the owners of certain real property located in Oakley, California. *See* Compl. ¶ 13. Plaintiffs obtained a loan to purchase the property. The "originator" of the loan was Aegis Wholesale Corp. *See* Compl. ¶ 8. MERS was the beneficiary under the deed of trust for the property. *See* Compl. ¶ 12.

The deed of trust, a copy of which has been provided by both Plaintiffs and B of A, and of which the Court may take judicial notice, confirms that Aegis was indeed the original lender. The deed of trust also confirms that MERS was the beneficiary. *See* Def.'s RJN, Ex. 1, at 1, 3 (deed of trust). Furthermore, the deed of trust specifies that MERS's role was to act "solely as a nominee for Lender and Lender's successors and assigns." Def.'s RJN, Ex. 1, at 1 (deed of trust). Finally, the deed of trust provides:

> Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

Def.'s RJN, Ex. 1, at 3 (deed of trust).

According to Plaintiffs, at some point, their loan was "securitized" and became part of a securitized trust pursuant to a Pooling and Servicing Agreement ("PSA"). *See* Compl. ¶¶ 11, 19; *see also* Compl. ¶ 32 (defining securitization as "the process whereby mortgage loans are turned into securities, or bonds, and sold to investors by Wall Street and other firms," with the purpose being "to provide a large supply of money to lenders for originating loans, and to provide investments to bond holders which were expected to be relatively safe"); *Jones v. Countrywide Homeloan*, No. CV F 11-0405 AWI JLT, 2011 U.S. Dist. LEXIS 64647, at *13-14 (E.D. Cal. June 17, 2011) (stating that "'securitization involves the transfer[] of the promissory note by sale to an asset portfolio in some form of structured investment vehicle'"); Black's Law Dictionary (2004) (defining securitize as "[t]o convert (assets) into negotiable securities for resale in the financial market, allowing the issuing financial institution to remove assets from its books and thereby improve its capital ratio and

liquidity while making new loans with the security proceeds"). Plaintiffs maintain that either Countrywide (now B of A) or the Bank of New York is the trustee for the securitized trust. *See* Compl. ¶¶ 11, 19. Plaintiffs also allege that Countrywide is the current master servicer of the loan. *See* Compl. ¶ 9.

According to Plaintiffs, their loan was not properly part of the securitized trust because the terms of the PSA were not complied with. More specifically, under the PSA, loans had to be assigned to the trust by a certain date (the closing date) and their loan was not assigned by that date. *See* Compl. ¶ 21. Furthermore, under the PSA, there must be an "unbroken chain of transfers and assignments" of loans, and there is a problem with the chain of ownership on their loan. *See* Compl. ¶¶ 25, 34, 39. Plaintiffs also assert that the assignments of their loan violated New York law. *See* Compl. ¶ 29.

Plaintiffs largely rely on the above allegations to challenge a foreclosure on their property. It is not clear whether the property has actually been foreclosed on. Documents provided by Defendant, and of which the Court may take judicial notice, reflect that, on August 19, 2009, MERS assigned the deed of trust to Countrywide. *See* Def.'s RJN, Ex. 4 (assignment of deed of trust, recorded on 3/3/2010). The following day, a notice of default was issued to Plaintiffs. The notice stated that Plaintiffs were delinquent on their loan payments in an amount in excess of $41,000. Countrywide was identified as the entity that Plaintiffs should contact. *See* Def.'s RJN, Ex. 3 (notice of default, recorded on 8/21/2009). A notice of trustee's sale was not issued until almost two years later in May 2011. *See* Def.'s RJN, Ex. 6 (notice of trustee's sale, recorded on 5/3/2011). There is nothing in the record to indicate that the sale actually took place.

In their complaint, Plaintiffs have asserted the following claims: (1) "lack of standing"; (2) fraud in the concealment; (3) fraud in the inducement; (4) intentional infliction of emotional distress; (5) slander of title; (6) quiet title; (7) declaratory relief; (8) violation of California Civil Code § 2932.5; and (9) violation of California Business & Professions Code § 17200. The majority of the claims are predicated on Plaintiffs' contention that Defendants do not own Plaintiffs' loan and therefore lack the authority to foreclose on the real property that secures the loan.

## II. DISCUSSION

A.  Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss based on the failure to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). A motion to dismiss based on Rule 12(b)(6) challenges the legal sufficiency of the claims alleged. *See Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). In considering such a motion, a court must take all allegations of material fact as true and construe them in the light most favorable to the nonmoving party, although "conclusory allegations of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal." *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). While "a complaint need not contain detailed factual allegations . . . it must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than sheer possibility that a defendant acted unlawfully." *Iqbal*, 129 S. Ct. at 1949.

B.  Failure to Tender

B of A (formerly known as Countrywide) argues first that Plaintiffs' complaint in its entirety should be dismissed because Plaintiffs have failed to tender the outstanding debt owed. The Court does not find this argument persuasive. As noted above, the majority of Plaintiffs' claims are predicated on their contention that none of the defendants – including B of A – owns the loan and therefore none has the authority to foreclose. If Plaintiffs are correct in arguing that none of the defendants own the loan, then Plaintiffs should have no obligation to tender any money at all to any defendant.

The California case law cited by B of A is not to the contrary. Those cases stand for the proposition that "an action to set aside a trustee's sale *for irregularities in sale notice or procedure* should be accompanied by an offer to pay the full amount of the debt for which the property was security." *Arnolds Mgmt. Corp. v. Eischen*, 158 Cal. App. 3d 575, 578 (1984) (emphasis added); *see*

1  *also Abdallah v. United Savs. Bank*, 43 Cal. App. 4th 1101, 1109 (1996) (stating that "appellants are
2  required to allege tender of the amount of United's secured indebtedness in order to maintain any
3  cause of action *for irregularity in the sale procedure*") (emphasis added).  Here, Plaintiffs are not
4  claiming an irregularity in sale notice or procedure; rather, they are, as stated above, contesting
5  Defendants' "standing" to even pursue foreclosure in the first instance.

6  C.     "Lack of Standing"

7       Plaintiffs' first cause of action is titled "lack of standing."  Plaintiffs' use of the term
8  "standing" is not appropriate because none of the defendants is actually bringing an affirmative
9  claim against Plaintiffs (at least not yet).  However, that should not be a reason to dismiss the claim,
10 especially since Plaintiffs are pro se.  The point that Plaintiffs are making is that Defendants have no
11 authority to foreclose because they do not even own Plaintiffs' loan in the first instance.  In other
12 words, this claim is essentially a wrongful foreclosure claim.

13     Some parts of Plaintiffs' wrongful foreclosure are problematic.  For example, Plaintiffs seem
14 to argue that the only persons who would have authority to foreclose are the certificate holders of the
15 securitized trust.  *See* Compl. ¶ 43.  Courts, however, have typically rejected such arguments.  *See,*
16 *e.g.*, *Jones*, 2011 U.S. Dist. LEXIS 64647, at *14 (noting that securitization gives "investors an
17 interest in the cash flow from the promissory notes that are the underlying assets" in the investment
18 vehicle; adding that "[i]t does not follow that any of the other entitlements of the lender of the Deeds
19 of Trust, including the power to declare default, are transferred or lost because of the transfer or sale
20 of the cash flow due from the mortgage") (emphasis omitted); *cf. Zivanic v. Washington Mut. Bank,*
21 *F.A.*, No. 10-737 SC, 2010 U.S. Dist. LEXIS 56846, at *18-19 (N.D. Cal. June 9, 2010) (rejecting
22 plaintiff's contention that defendants had no right to receive any of the loan payments because
23 "'[t]he true lenders and owners of the loan are the individual investors of the securitized loan'";
24 stating that "[h]er assertion that her loan payments should be made to the purchasers of the security
25 instrument backed by Plaintiff's mortgage is pure speculation"); *see also West v. Mortgage Elec.*
26 *Registration Sys.*, No. 2:10CV1047, 2011 U.S. Dist. LEXIS 37678, at *5-6 (D. Utah Apr. 6, 2011)
27 (stating that "plaintiffs offer no evidence or legal argument that MERS fails to have the rights
28 delineated to it in the deed of trust, including the power to foreclose, irrespective of who owns the

5

note[;] [a]ny new contract that is the result of securitization does not free plaintiffs from the express terms of the deed of trust").

Also, Plaintiffs contend that there is a problem with "standing" because MERS lacks the authority to foreclose or transfer the loan, *see* Compl. ¶¶ 46, 53; *see also* Docket No. 6 (Def.'s RJN, Ex. 4) (assignment of deed of trust, from MERS to B of A), but again courts have generally found such arguments unpersuasive. *See Gomes v. Countrywide Home Loans, Inc.*, 192 Cal. App. 4th 1149, 1158 (2011) (stating that plaintiff's "agreement [in the deed of trust] that MERS has the authority to foreclose thus precludes him from pursuing a cause of action premised on the allegation that MERS does not have the authority to do so"); *cf. Cervantes*, 656 F.3d at 1041-42 (rejecting plaintiffs' claim of conspiracy among MERS members to commit fraud, in part because the deed of trust stated on its face that MERS was acting solely as a nominee of the lender and held only legal title). The fact that Plaintiffs' loan has been "securitized" has no effect on the ability of MERS to foreclose or transfer. *See West*, 2011 U.S. Dist. LEXIS 37678, at *5-6 (stating that "plaintiffs offer no evidence or legal argument that MERS fails to have the rights delineated to it in the deed of trust, including the power to foreclose, irrespective of who owns the note[;] [a]ny new contract that is the result of securitization does not free plaintiffs from the express terms of the deed of trust").

Finally, Plaintiffs assert that a promissory note may not be transferred unless endorsed and physically transferred, *see* Compl. ¶¶ 48-49, 51, and further that a promissory note cannot be separated from the deed of trust, *see* Compl. ¶ 52, but they cite no authority to support the first argument and the second argument has only limited force as the Ninth Circuit has indicated that a mortgage is unenforceable only if a promissory note and deed are "irreparably split." *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1044 (9th Cir. 2011) (stating that "the notes and deeds are not irreparably split: the split only renders the mortgage unenforceable if MERS or the trustee, as nominal holders of the deeds, are not agents of the lenders"). Here, Plaintiffs have failed to explain how there has been any irreparable splitting.

This leaves only the argument that Defendants do not own the loan and lack the authority to foreclose because of the alleged improper securitization of Plaintiffs' loan. As noted above, Plaintiffs argue that their loan was not properly part of the securitized trust because the terms of the

6

Pooling and Servicing Agreement ("PSA") were not complied with – *i.e.*, their loan was not assigned to the trust by the closing date and there is a problem with the chain of ownership on their loan. B of A makes two challenges to this final argument. First, it argues that Plaintiffs have no right to challenge Defendants' authority to foreclose because that would improperly inject judicial review into the nonjudicial foreclosure process. Second, it contends that Plaintiffs have no standing to assert a breach of the PSA.

B of A does have authority to support its first argument, *i.e.*, *Gomes*. There, the plaintiff brought an action challenging the authority of MERS to initiate the foreclosure. The state court held that the plaintiff had no right to bring such an action. Notably, the court expressly rejected the plaintiff's argument that California's nonjudicial foreclosure statute, California Civil Code § 2924, allowed him to file suit. It stated:

> Section 2924, subdivision (a)(1) states that a "trustee, mortgage, or beneficiary, or any of their authorized agents" may initiate the foreclosure process. However, nowhere does the statute provide for a judicial action to determine whether the person initiating the foreclosure process is indeed authorized, and we see no ground for implying such an action. . . . The recognition of the right to bring a lawsuit to determine a nominee's [*i.e.*, MERS] authorization to proceed with foreclosure on behalf of the noteholder would fundamentally undermine the nonjudicial nature of the process and introduce the possibility of lawsuits filed solely for the purpose of delaying valid foreclosures.

*Gomes*, 192 Cal. App. 4th at 1155; *see also id.* at 1156 (stating that, "[b]ecause California's nonjudicial foreclosure statute is unambiguously silent on any right to bring the type of action identified by [the plaintiff], there is no basis for the courts to create such a right").

While *Gomes* does support B of A's position, the holding in *Gomes* may not be so sweeping. Simply because the California legislature set up a nonjudicial foreclosure process does not mean that that process is entirely immunized from judicial review, particularly where the claim is that the foreclosing party has no authority to foreclose in the first instance. Thus, *Gomes* itself seems to leave open the possibility that, under certain circumstances, a plaintiff may bring a claim for lack of authority to foreclose – *i.e.*, where the plaintiff has identified in his or her complaint "a *specific factual basis* for alleging that the foreclosure was not initiated by the correct party." *Id.* at 1156 (distinguishing other non-California state court cases on that basis) (emphasis in original); *see also*

*Sacchi v. Mortgage Elec. Registration Sys.*, No. CV 11-1658 AHM (CWx), 2011 U.S. Dist. LEXIS 68007, at *23 (C.D. Cal. June 24, 2011) (noting that "the *Gomes* court actually suggested that a cause of action for wrongful foreclosure might survive if 'the plaintiff's complaint identified a specific factual basis for alleging that the foreclosure was not initiated by the correct party'").

The Court concludes that the less sweeping reading of *Gomes* is proper. Nonetheless, Plaintiffs still must allege a specific factual basis for their claim that the foreclosure was not initiated by the correct party. Plaintiffs have not met this standard. As noted above, Plaintiffs make two arguments regarding the securitization: (1) that their loan was not timely transferred to the securitized trust and (2) that there was a problem with the chain of ownership. Even if Plaintiffs were right that their loan was not timely transferred to the trust, that does not mean that the owner of the note and deed of trust could not therefore foreclose. That would simply mean that the loan was not put into the trust (*i.e.*, the investment vehicle). It does not necessarily affect the trustee's authority set forth in the deed and assignment documents to initiate foreclosure. As for Plaintiffs' contention that there was a problem with the chain of ownership, that is more on point; but here more specifics are needed. It is not clear from the complaint what the problem with the chain of ownership is. *See generally* Compl. ¶ 39.

Accordingly, the Court dismisses Plaintiffs' "lack of standing" claim – *i.e.*, their wrongful foreclosure claim – but without prejudice. Plaintiffs have leave to amend their wrongful foreclosure claim but only to the extent it is based on (1) a purported irreparable splitting of the promissory note and deed of trust and/or (2) an alleged problem with the chain of ownership. In their amended complaint, Plaintiffs must explain (1) *why* the promissory note and deed of trust were irreparably split and (2) *what* the alleged problem with the chain of ownership is. Plaintiffs may *not* re-allege in their amended complaint that the foreclosure was wrongful because (1) the only persons who would have authority to foreclose are the certificate holders of the securitized trust and (2) MERS lacks the authority to foreclose or transfer the loan. Those theories have been rejected by the Court, and with prejudice.

///

///

8

D. <u>Fraud (in the Concealment and Inducement)</u>

In their complaint, Plaintiffs have asserted fraud claims based on two different theories: (1) Defendants never disclosed to Plaintiffs that their loan could or would be securitized and (2) Defendants misrepresented to Plaintiffs that Defendants owned the loan and/or had the authority to foreclose. In its motion to dismiss, B of A argues that both fraud claim should be dismissed because Plaintiffs have failed to plead fraud with sufficient particularity, *see* Fed. R. Civ. P. 9(b), and because Plaintiffs have failed to allege any harm as a result of the alleged misrepresentations.

B of A's first argument is not especially persuasive. Plaintiffs do not have to allege, *e.g.*, the who, when, where on the first fraud theory because the first fraud theory is a failure to disclose, not an affirmative misrepresentation. As for the second fraud theory, implicitly, the representations at issue are those representations related to the foreclosure process – *e.g.*, the issuance of the notice of default, the notice of trustee's sale, etc. Thus, B of A does not need more information in order to defend.

B of A's second argument, however, has more merit. On the first fraud theory, Plaintiffs have failed to explain how the failure to disclose the fact that the loan could be or would be securitized caused them any injury. *See In re Estate of Young*, 160 Cal. App. 4th 62, 79 (2008) (stating that "the required elements for claims for fraud [are]: (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or scienter); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage") (internal quotation marks omitted). Indeed, it would appear that securitization could not affect the terms of Plaintiffs' loan. Securitization is simply a process by which a mortgage is made part of an investment vehicle. *Cf. Cervantes*, 656 F.3d 1034, 1042 (9th Cir. 2011) (stating that "the plaintiffs have failed to show that the designation of MERS as a beneficiary caused them any injury by, for example, affecting the terms of their loans, their ability to repay the loans, or their obligations as borrowers"). In their complaint, Plaintiffs assert that securitization had an "adverse effect on the value of [their] home," Compl. ¶ 63, but they have failed to explain how.

As for the second fraud theory, Plaintiffs must allege that they suffered harm as a result of Defendants' misrepresentation that they owned the loan and/or had the right to foreclose – and not,

9

*e.g.*, as a result of Plaintiffs' default. In their complaint, Plaintiffs do identify damages suffered as a result of the alleged fraud, *see* Compl. ¶ 76, but some of them do not appear plausibly attributable to the misrepresentation (*e.g.*, the costs of the loan, damage to Plaintiffs' financial security). While Plaintiffs have alleged that they suffered emotional distress, it is not clear that this was because they relied on Defendants' assertion of the right to foreclose. Finally, and most importantly, because it is not clear what the problem with the chain of ownership is, there is not at this point an adequate allegation that there was a misrepresentation in the first place.

Accordingly, at this juncture, the Court dismisses both fraud claims but without prejudice. Plaintiffs may amend to explain why securitization had an adverse effect on the value of their home. In addition, Plaintiffs may amend to clarify what the problem with the chain of ownership is and how they relied on Defendants' representation that they owned the loan and/or had the authority to foreclose.

E. <u>Intentional Infliction of Emotional Distress</u>

The elements of a cause of action for intentional infliction of emotional distress ("IIED") are as follows: "(1) outrageous conduct by the defendant, (2) intention to cause or reckless disregard of the probability of causing emotional distress, (3) severe emotional suffering and (4) actual and proximate causation of the emotional distress." *Cole v. Fair Oaks Fire Protection Dist.*, 43 Cal. 3d 148, 155 (1987) (stating that a prima facie case for IIED requires the above elements). In the instant case, Plaintiffs have asserted an IIED claim based on Defendants' misrepresentation that they owned the loan at issue and/or had the authority to foreclose. *See* Compl. ¶ 78.

B of A makes several arguments in favor of dismissal of the IIED. Some of the arguments are simply a rehash of arguments presented in conjunction with the claims discussed above. The additional arguments are: (1) B of A's actions cannot subject it to liability for IIED because it has "merely pursued its own economic interests and properly asserted its legal rights," *Kruse v. Bank of Am.*, 202 Cal. App. 3d 38, 67 (1988); (2) Plaintiffs have made only conclusory allegations that Defendants intended to inflict emotional distress; and (3) Plaintiffs have made only conclusory allegations that Defendants engaged in outrageous and extreme conduct.

The Court rejects B of A's first argument. B of A may have simply been pursuing its own economic interests but, if it did not own the loan and/or have the authority to foreclose in the first place, then it could not be "properly assert[ing] its legal rights." *Id.*

B of A's second argument, however, has more force. Admittedly, Plaintiffs have alleged that Defendants tried to foreclose "with the specific intent of inflicting emotional distress on the Plaintiffs, such that Plaintiffs would be so emotionally distressed and debilitated that he/she would be unable to exercise legal rights in the Property, [etc.]" Compl. ¶ 80. But there are no factual allegations from which an inference could be made that B of A – or any of the other defendants – had the specific intent of inflicting emotional distress. While there are some general allegations in the complaint that Defendants knew, or even should have known, that they did not own the loan, *see, e.g.*, Compl. ¶ 88 (simply alleging in general terms that "Defendants knew or should have known that [*e.g.*, the notice of default and notice of trustee's sale] were improper in that at the time of the execution and delivery of said documents, Defendants had no right, title, or interest in the Property"), that allegation at this point is not plausible. Plaintiffs do not explain *how* Defendants, including B of A, knew or should have known that there was a problem with the chain of ownership.

Finally, the third argument has merit for the same reasons – *i.e.*, absent some sort of indication that B of A knew of the problems with the loan, then it cannot be said that B of A acted outrageously. *See generally McDaniel v. Gile*, 230 Cal. App. 3d 363, 372 (1991) (stating that "[o]utrageous conduct is that which exceeds . . . all bounds usually tolerated by a decent society, [and is] of a nature which is especially calculated to cause, and does cause, mental distress"; adding that "[b]ehavior may be considered outrageous if a defendant (1) abuses a relation or position which gives him power to damage the plaintiff's interest; (2) knows the plaintiff is susceptible to injuries through mental distress; or (3) acts intentionally or unreasonably with the recognition that the acts are likely to result in illness through mental distress") (internal quotation marks omitted).

Accordingly, the Court dismisses the IIED claim but without prejudice so that Plaintiffs may amend. Any amendment must address the deficiencies identified by the Court above.

///

///

11

F.  Slander of Title

Under California law, a claim for slander of title requires "publication, falsity, absence of privilege, and disparagement of another's land which is relied upon by a third party and which results in a pecuniary loss." *Smith v. Commonwealth Land Title Ins. Co.*, 177 Cal. App. 3d 625, 630, 223 Cal. Rptr. 339 (1986); *see also Southcott v. Pioneer Title Co.*, 203 Cal. App. 2d 673, 676 (1962) (stating that slander of title is "a tortious injury to property resulting from unprivileged, false, malicious publication of disparaging statements regarding the title to property owned by plaintiff, to plaintiff's damage"). In the instant case, Plaintiffs assert slander of title because Defendants, *e.g.*, issued the notice of default and notice of trustee's sale. *See* Compl. ¶ 87. B of A argues that the slander claim must be dismissed as a matter of law because these actions are privileged under California Civil Code § 2924(d). *See, e.g.*, *Milyakov v. JP Morgan Chase Bank*, No. C 11-02066 WHA, 2011 U.S. Dist. LEXIS 99152, at *6 (N.D. Cal. Sept. 2, 2011) (stating that "[t]hese notices are privileged, and as to these two documents the plaintiffs cannot meet the 'unprivileged' element for a claim of slander of title"). Under § 2924(d): ""All of the following shall constitute privileged communications pursuant to Section 47: (1) The mailing, publication, and delivery of notices as required by this section. (2) Performance of the procedures set forth in this article." Cal. Civ. Code § 2924(d).

As a preliminary matter, the Court takes note that at least some courts have in fact applied the § 2924(d) privilege even where the plaintiff's claim is that the defendant lacked authority to foreclose in the first instance. *See, e.g.*, *Green v. Alliance Title*, No. CIV S-10-0242 MCE EFB PS, 2010 WL 3505072 (E.D. Cal. Sept. 2, 2010). For purposes of this opinion, the Court assumes that the privilege may be applied in such circumstances. But even with that assumption, the question remains as to whether the privilege is an absolute one (§ 47(b)) or a qualified one (§ 47(c)).[1] *See,*

---

[1] Under § 47(b), a privileged publication is one made

> [i]n any (1) legislative proceeding, (2) judicial proceeding, (3) in any other official proceeding authorized by law, or (4) in the initiation or course of any other proceeding authorized by law and reviewable pursuant to Chapter 2 (commencing with Section 1084) of Title 1 of Part 3 of the Code of Civil Procedure,

12

*e.g.*, *Guillen v. Bank of Am. Corp.*, No. 5:10-cv-05825 EJD (PSG), 2011 U.S. Dist. LEXIS 98860, at *32 (N.D. Cal. Aug. 31, 2011) (noting that "[s]ome courts . . . have suggested a split of authority exists as to which of these privileges apply in this context). This Court has previously determined (in a different case) that § 47(c) is applicable, and not § 47(b), because § 47(b) applies to judicial and quasi-judicial proceedings only and nonjudicial foreclosure is a private procedure. *See Consumer Solutions Reo, LLC v. Hillery*, 658 F. Supp. 2d 1002, 1018-19 (N.D. Cal. 2009) (following *Kachlon v. Markowitz*, 168 Cal. App. 4th 316 (2008)). Under § 47(c), conduct is privileged so long as it is not malicious. *See id.* at 1019.

In the instant case, Plaintiffs have alleged that Defendants, including B of A, acted maliciously, but those allegations are largely conclusory. *See* Compl. ¶ 92 (alleging that, "[a]t the time that the false and disparaging documents were created and published by the Defendants, Defendants knew the documents were false and created and published them with the malicious intent to injure Plaintiffs and deprive them of their exclusive right, title, and interest in the Property, and to obtain the Property for their own use by unlawful means"). Plaintiffs have failed to include any plausible allegations of maliciousness. In the absence of such allegations, the slander claim is dismissed but without prejudice. Plaintiffs have leave to amend to address the above deficiency. The Court also advises Plaintiffs that, in their amended complaint, they should clearly allege (to the extent they have a good faith basis for alleging consistent with Federal Rule of Civil Procedure 11) that a third party relied on the slander which resulted in economic loss to Plaintiffs. Simply because Plaintiffs have a cloud on their title and that have incurred expenses to clear title is not sufficient. *See* Compl. ¶¶ 89-90.

---

with certain exceptions. Cal. Civ. Code § 47(b).

Under § 47(c), a privileged publication is one made

> [i]n a communication, without malice, to a person interested therein, (1) by one who is also interested, or (2) by one who stands in such a relation to the person interested as to afford a reasonable ground for supposing the motive for the communication to be innocent, or (3) who is requested by the person interested to give the information. . . .

*Id.* § 47(c).

13

G. <u>Quiet Title</u>

B of A has moved for dismissal of the quiet title claim on two grounds: (1) Plaintiffs have failed to allege tender and (2) Plaintiffs have not specified what the adverse claims to title are, including identifying which Defendants have which interests. *See* Cal. Code Civ. Proc. § 761.020 (providing that a quiet title complaint must include "[t]he adverse claims to the title of the plaintiff against which a determination is sought"). The first argument is problematic because, as discussed above, Plaintiffs' position is that Defendants do not have any ownership interest in the property to begin with. On the other hand, B of A does have a legitimate point, which is a part of their second argument, that Plaintiffs are asking to be declared title owner of record even though they appear to be in default to someone.

Accordingly, the Court dismisses the claim but without prejudice so that Plaintiffs may amend and clarify whether they have a basis for seeking outright ownership. The Court also advises Plaintiff that, for their quiet title claim, they must provide a verification. *See* Cal. Code Civ. Proc. § 761.020 (providing that a quiet title complaint must be verified).

H. <u>Declaratory Relief</u>

In their complaint, Plaintiffs basically ask for a declaration that Defendants do not own the loan and/or have no authority to foreclose. B of A argues that the claim for declaratory relief should be dismissed because it is simply a remedy and not a cause of action.

While there is case law that supports B of A's position, there is also case law to the contrary – *i.e.*, which indicates that a claim for declaratory relief is possible. *See, e.g.*, *Karimi v. GMAC Mortg.*, No.: 11-CV-00926-LHK, 2011 U.S. Dist. LEXIS 136071, at *15-16 (N.D. Cal. Nov. 28, 2011); *see also* 28 U.S.C. § 2201 (providing that "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought"). Arguably, the claim for declaratory relief is duplicative (especially with respect to the claim for wrongful foreclosure, *see Karimi*, 2011 U.S. Dist. LEXIS 136071, at *15-16), but that is a different matter.

At this point, the Court shall dismiss the claim for declaratory relief, not because it is duplicative of the wrongful foreclosure claim but because it is flawed in the same way that the

14

wrongful foreclosure claim is flawed. The dismissal of the declaratory relief claim is without prejudice so that Plaintiffs have leave to amend.

I. Violation of California Civil Code § 2932.5

California Civil Code § 2932.5 provides as follows:

> Where a power to sell real property is given to a mortgagee, or other encumbrancer, in an instrument intended to secure the payment of money, the power is part of the security and vests in any person who by assignment becomes entitled to payment of the money secured by the instrument. The power of sale may be exercised by the assignee if the assignment is duly acknowledged and recorded.

Cal. Civ. Code § 2932.5. In their complaint, Plaintiffs allege that Defendants violated § 2932.5 because they "cannot show valid and recorded assignments." Compl. ¶ 107.

B of A has moved to dismiss the § 2932.5 claim on the ground that the statute applies only to mortgages and not to deeds of trust. While there is authority that supports B of A's position, there is also authority to the contrary. *See, e.g.*, *Cruz v. Aurora Loan Servs. LLC (In re Cruz)*, 457 B.R. 806 (S.D. Cal. 2011); *see also Tamburri v. Suntrust Mortg., Inc.*, No. C-11-2899 EMC, 2011 U.S. Dist. LEXIS 72202, at *12-13 (N.D. Cal. July 6, 2011) (stating that whether § 2932.5 applies to deeds of trust raises a serious question sufficient to grant a preliminary injunction against the sale of foreclosed property). That being said, even if the statute applies to deeds of trust, it is not clear that there was a violation of § 2932.5. Documents of which the Court may take judicial notice reflect that MERS assigned the deed of trust to B of A (then Countrywide) and that that assignment was in fact recorded. *See* Def.'s RJN, Ex. 4 (assignment of deed of trust, recorded on 3/3/2010). Thus, to the extent Plaintiffs' only argument is that MERS had no authority to assign, this claim should fail. Under the deed of trust, MERS had the authority to assign as the nominee of the original lender (as well as the lender's successors and assigns).

The Court therefore dismisses the § 2932.5 claim. It shall, however, give Plaintiffs leave to amend the claim because it not clear at this point that there is no viable claim to be had. Plaintiffs are forewarned, however, that the § 2932.5 claim may not rest on the allegation that MERS was without the authority to assign to B of A. That theory has been rejected with prejudice.

J. <u>Violation of California Business & Professions Code § 17200</u>

California Business & Professions Code § 17200 prohibits unlawful, unfair, or fraudulent business acts or practices. In their complaint, Plaintiffs do not make any specific allegations in conjunction with this claim but simply incorporate by reference all paragraphs for the other causes of action. Thus, this claim fails for the reasons that the claims discussed above fail, and the Court shall dismiss the claim without prejudice.

To the extent Defendants argue that the § 17200 claim should also be dismissed because Plaintiffs have not alleged that they have lost money or property as a result of the alleged violation, *see* Cal. Civ. Code § 17204 (providing that a § 17200 claim must be brought "by a person who has suffered injury in fact and has lost money or property as a result of the unfair competition"), the Court does not agree. According to Defendants, any prospect that Plaintiffs will lose their property if the foreclosure is not stopped is insufficient to establish standing. While there is authority to support Defendants' position, *see Jensen v. Quality Loan Serv. Corp.*, 702 F. Supp. 2d 1183, 1199 (E.D. Cal. 2010) (stating that "Plaintiff has not alleged that he has lost any property, only that he 'will' lose his personal residence if a non-judicial foreclosure occurs"), this Court has held otherwise in a different case. *See Sullivan v. Wash. Mut. Bank, FA*, No. C-09-2161 EMC, 2009 U.S. Dist. LEXIS 104074, at *12-14 (N.D. Cal. Oct. 23, 2009) (acknowledging that "no foreclosure has taken place and therefore, it may be argued that Ms. Sullivan has not actually lost any property as a technical matter," but "it is undisputed that foreclosure proceedings have been initiated which puts her interest in the property in jeopardy," a fact which "is sufficient to establish standing"; adding that "the encumbrance on the deed of trust arguably constitutes a loss of property" and that "it would make little sense to conclude that standing for the § 17200 claim could not arise until the property was actually sold" given that the point behind § 17204 was to ensure that only truly affected persons could sue).

### III. <u>CONCLUSION</u>

For the reasons discussed above, the Court dismisses each of the claims at issue without prejudice. Plaintiffs have leave to amend the claims but, as indicative above, certain theories underlying the claims are not permissible. For example, Plaintiffs may not re-allege in their

16

amended complaint that MERS does not have the authority to foreclose or transfer (given the language used in the deed of trust).

**Plaintiffs shall have thirty (30) days from the date of this order to file an amended complaint. If Plaintiffs fail to amend their complaint by this date, then their case will automatically be dismissed *with* prejudice, and the Clerk of the Court shall enter judgment against Plaintiffs and close the file in this case.**

This order disposes of Docket No. 5.

IT IS SO ORDERED.

Dated: December 16, 2011

_____
EDWARD M. CHEN
United States District Judge